*264 MEMORANDUM
WHEAT, C. J.
This action is brought by 134 Class I railroad carriers or their Receivers or Trustees in Bankruptcy, the Pullman Company, the Railway Express Agency, Inc., and the South Eastern Express Company, to test the constitutionality of the Railroad Retirement Act (Public No. 485, 73d Congress).
The Act provides for the appointment of a Railroad Retirement Board, charged with administering and enforcing the Act, to be composed of three members appointed by the President by and with the advice and consent of the Senate. This Board and its individual members are the defendants in the case.
The Act is entitled “An Act to provide a retirement system for railroad employees, to provide unemployment relief, and for other purposes.” It is set forth in full as an appendix to the bill. The relief asked is an injunction against its enforcement.
The defendants have answered the bill, but no serious issue of fact is raised by the answer. The case came on to be heard in the form of a motion for a temporary injunction but by agreement of the parties it has been treated as a final hear *265 ing upon the merits, both sides submitting evidence in the form of affidavits.
Briefly, the Act sets up a retirement and pension system for all employees of carriers subject to the Interstate Commerce Act. Retirement is made compulsory at the age of 65, but may be extended by agreement between carrier and employee for successive periods of one year until the age of 70. Every person who has been in carrier employ since within one year prior to the passage of the Act is entitled to receive the annuity upon attaining the age of 65, calculated by the application of graduated percentages of his average monthly compensation to the number of years of his service not exceeding thirty. Employees completing thirty years of service may retire before the age of 65, but annuities payable prior to the age of 65 are reduced by one-fifteenth thereof for each year that the employee is below the age of 65, except where the retirement is due to physical or mental inability to continue in the service. To provide funds for the payment of the annuities which are to continue during the lifetime of the annuitants, and the administration expenses of the Act, carriers and their employees are required to contribute to the retirement fund, the employees contributing at the present time 2% of their compensation and the carriers twice the amount of the employees’ contributions. The Retirement Board is given authority, if as and when necessary to increase the percentage fixed in the Act, without, however, altering the ratio between employee and carrier contributions. The carriers are required to deduct the contributions of their employees from their compensation and to pay the sums so deducted, together with their own contributions, quarterly into the Unitéd States Treasury, the first contributions being payable on November 1, 1934, and the first annuities under the Act being payable after February 1, 1935. Official representatives of employee organizations who are former carrier employees are given the option of becoming beneficiaries under *266 the Act by contributing to the retirement fund both the employee and the carrier contributions.
Both sides seem to agree that the only source of power in Congress to pass such an Act is the Interstate Commerce Clause of the Constitution. The plaintiffs claim in a broad way that the Act is not a regulation of interstate commerce and in addition point out certain provisions of the Act which they claim invalidate it because they are not regulative of interstate commerce or are arbitrary, unreasonable, capricious and confiscatory, and amount to a taking of their property without due process of law.
In this memorandum I have merely outlined my conclusions without taking the time which would be necessary for an elaborate discussion, for I realize the importance to all of an immediate decision.
I am not prepared to say that the enactment of a statute providing for the compulsory retirement at a certain age of employees of railroads engaged in interstate commerce, together with provisions for the pensioning of employees so retired is beyond the power of Congress under the interstate commerce clause of the Constitution. Congress has power to regulate the relation of master and servant between interstate carriers and such of their employees as are actually engaged in interstate commerce. The fact that so many of the plaintiff carriers have for many years maintained voluntary retirement and pension systems furnishes persuasive evidence of their belief that such systems tend to promote the efficiency of their personnel by stimulating loyalty, encouraging continuity of employment with resulting security for old age, and thus increasing the morale of those in the organization. It is argued, however, that the features of the voluntary pension systems which tend to promote these desirable ends not only are absent from the Retirement Act but that it contains other provisions wholly subversive of those ends. It is said that the Act being mandatory upon the carrier relieves the employee of any feel *267 ing of gratitude or loyalty which naturally is felt toward a benefactor; that it does not promote continuity of service because the benefits of the Act do not depend upon any length of service in any particular employment or by any particular employer; so that there is no incentive for an employee to remain continuously in the service of any particular carrier; that the right to receive the annuity in no way depends upon efficient and faithful performance of duty, and that the benefits of the Act are shared equally by all employees even those discharged for cause.
These matters, however, seem to me to involve questions of wisdom and propriety rather than of power and to be for the consideration of the Congress rather than of the courts.
When the Act is examined in detail, however, I find it contains provisions which, in my opinion, were beyond the power of Congress and which render it unconstitutional. .
In the first place, the Act is unconstitutional because it extends its provisions to persons not engaged in interstate commerce.
The Retirement Act confers its benefits upon all employees of any company to which it relates without regard to distinction between interstate commerce, intrastate commerce, or activities which do not constitute commerce at all.
It was held in the Employers’ Liability cases, 207 U. S. 463, that one who engages in interstate commerce does not submit all his business concerns to the regulating power of Congress and that an attempt on the part of Congress to extend its regulatory powers to all employees of an interstate carrier regardless of their duties and the work performed by them made the Act invalid. The present Act applies to all employees of the plaintiffs. Indeed there is no claim that it does not. It appears from the record in this case that some 200,000, approximately 1/5 of all the employees of the plaintiffs, do not work in interstate commerce or in work so closely connected therewith as to be a part thereof. Among these *268 men may be mentioned mechanical employees; executive and general officers and their staffs, not including the operating-vice presidents and their staffs; those engaged in accounting not having a direct relationship to interstate transportation; those engaged in the construction of buildings, or the construction of new equipment; those who devote themselves to finances, custody and administration of funds or corporate proceedings and records; those engaged exclusively in work relating to real estate taxes and titles, in the management, operation, care and protection -of buildings or lands not devoted to or used in connection with transportation and men employed in coal mines. As to some of these men, there may be room for differences of opinion as to their proper classification, but it is plain that there are many who are not in any real sense engaged in interstate commerce.
The proof shows that the Long Island Railroad Company, whose lines are wholly within the State of New York, the Illinois Central Railroad, and the New York Central Railroad have a large number of employees engaged solely in intrastate service. It appears that the New York, New Haven & Hartford Railroad has physical property of the value of more than $7,000,000 which the Interstate Commerce Commission has classified as non-carrier. The New York Central has property in excess of $43,000,000 so classified.. The Pennsylvania Railroad Company has $17,000,000, and the Union Pacific, $19,-000,000. The employees engaged in work in connection with this property áre included as beneficiaries of the Act.
It seems to me that Congress exceeded its power to regulate interstate commerce, when it attempted to make all employees of the plaintiffs beneficiaries under this Act, making no distinction between those engaged in interstate commerce and those not so engaged.
Section 1 of the Act includes as employees entitled to its benefits everyone who has been in such service within one year before the enactment thereof. The evidence discloses *269 that about 143,000 men left the service of the railroads during that year and were not in such service on the date of enactment and that of this number approximately 80,000 probably will not return to the railroad service. Some of these men were dismissed for the good of the service. I can see no reasonable relation between giving these men the benefits of the Act, and the regulation of Interstate Commerce.
Furthermore, the Act provides annuities for all persons who, at the time of its enactment, were, or within the period of one year before its enactment had been, in carrier service and who had attained or thereafter should attain, the age of 65 years, or had completed or thereafter should complete 30 years of such service. The right to the annuities is not dependent upon the rendition of service subsequent to enactment and the computation of the annuities is not confined to service rendered subsequent but includes service rendered prior thereto.
The defendant Latimer, in his affidavit, shows that upon the assumption of the retirement at 65 of such of the present employees of the carriers as, on an expectancy basis, survive to that age, the gross annuities required by the statute to be paid to them for services rendered prior to the enactment of the law will amount in the aggregate to over four billion dollars.
The statute provides that upon the reemployment hereafter by any carrier of any man previously in railroad service all of his prior service is to be counted as part of the service entitling him to the annuity. The evidence tended to show that there are today over a million persons with that possibility.
To require the plaintiffs to contribute huge sums of money to be devoted to the payment of pensions or annuities based upon services long since completed and fully paid for seems to me to take their property without due process cf law.
*270 I am constrained, therefore, to hold that the Act is unconstitutional.
The natural reluctance which a judge feels when compelled to hold an act of Congress unconstitutional is in this case somewhat tempered by the fact that the Act seems not to be satisfactory even to some who favor it in principle and purpose. When the President gave his approval, he made a statement explaining his action in which he said, among other things: “Decision on this bill has been difficult.”
He gave as among the “principal arguments against the measure”:
“(a) The Federal Coordinator of Transportation at much public expense is now engaged in a thorough survey of the whole subject of employment security on railroads. He requested many months ago that legislation be deferred until the completion of these studies and the filing of his report.
“(b) The bill, although much improved in its final form, is still crudely drawn and will require many changes and amendments at the next session of Congress.”
A decree will be made in favor of the plaintiffs, granting the relief prayed for in the bill.